I. B. Russell and M. O. Russell (Husband and Wife) v. Commissioner. L. E. Russell and N. I. Russell (Husband and Wife) v. Commissioner.
Russell v. Commissioner
Docket Nos. 57607, 57608.
United States Tax Court
T.C. Memo 1956-177; 1956 Tax Ct. Memo LEXIS 116; 15 T.C.M. (CCH) 921; T.C.M. (RIA) 56177; July 30, 1956
*116 Respondent sustained for failure of proof of error. E. O. Palermo, Esq., for the petitioners. Henry C. Stockell, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Respondent determined the following deficiencies in petitioners' income tax: Docket
Number
Petitioners
Year
Deficiency
57607
I. B. Russell and M. O. Russell
1945
$1,241.00
57607
I. B. Russell and M. O. Russell
1946
3,387.63
57608
L. E. Russell and N. I. Russell
1945
1,245.41
57608
L. E. Russell and N. I. Russell
1946
3,307.98
Two questions were put in issue: (1) Did the transfer of certain assets of the Russell-Black partnership to Citrus Products Company constitute the sale of a capital asset; and (2) Did certain advances by petitioners to Russell Corporation, owned by them, become worthless in 1946? Part of the facts on which the questions were submitted were stipulated and the remainder were adduced by oral testimony. [Finding of Fact] In 1944, two groups of individuals, the first being the Russell-Black Group, a partnership of petitioners and others which was engaged in constructing a citrus juice plant in Plant *117 City, Florida, and a second group, known as the Prosser Group, decided to form a new partnership, to be known as the Citrus Products Company, to take over the citrus plant project. The capital of the new partnership was to be $106,000, of which sum each group was to contribute one-half, or $53,000. The Prosser Group contributed $53,000 in cash to the new partnership and the Russell-Black Group transferred assets appraised at $53,000 consisting of building and equipment. The petitioners (the Russells) treated the transaction as a sale and a bill of sale was executed. All of the parties understood and treated the transaction as a sale. They reported the transaction, on their income tax returns, as a sale giving rise to capital gain in the amount of $27,577.19, that being the difference between the appraised value of the assets and the depreciated value as carried on the books. Petitioners were advised on the situation by legal counsel and by a certified public accountant. They now contend the transaction was a tax-free transfer and there was no gain of any kind. The parties stipulate that the assets transferred to Citrus Products Company had a depreciated basis of $25,422.81 on the *118 books of the Russell-Black partnership and were assigned a value of $53,000 on the books of the Citrus Products Company. The new partnership claimed depreciation on the new basis. [Opinion] On the evidence before us, the petitioners have failed to demonstrate to the Court that the transaction was a tax-free transfer or anything else than a sale of a capital asset, as originally determined by them. They treated it as such and the evidence does not show their actions to have been in error. The case is similar in principle to , where we held the parties to the consequences of their actions in transferring certain assets to a new partnership and crediting their accounts accordingly. Here a sale was planned by the parties and carried out as planned. Petitioners have not shown their original understanding and concept of the deal to be in error. Respondent is sustained. As to the alleged bad debts, the parties stipulate that if any funds were advanced by the Russells as loans and if they were properly subject to deduction, the amount of the deduction is $13,695.95 as to I. B. Russell and $14,935.68 as to L. E. Russell. The parties do not *119 stipulate that loans in the stated amounts were in fact made or to the existence of the alleged debts. The Russells and their father were the sole stockholders of the Russell Corporation and any money advanced by them to their corporation might as reasonably be held to constitute contributions to capital as loans. There is no presumption that they were loans. The corporation was admittedly under-capitalized, and the advances were to provide working capital or, as petitioners characterize it, "money to work on." The burden of proof of error rested upon petitioners. On the meager record we have before us, we have no alternative to holding that petitioners have not carried the burden of proving that the advances, if any were made, were loans. See , affd. ; ; The Colony, Inc., 26 T.C. - (April 19, 1956). Moreover, the proof does not show that the loans, if any there were, became worthless in 1946. The first fact bearing on the question was the meeting held on December 23, 1946, when certain of the larger creditors met with petitioners to consider their then present financial *120 situation and to determine future policy. Petitioners did not relinquish control of the corporation until late in 1947. There is no fact or group of facts occurring in 1946 which can be pointed to as marking the worthlessness of the alleged debts. On the whole record we are unable to find that the debts became worthless in 1946. In view of the above conclusions, it is unnecessary to consider the further question, whether the alleged bad debts were technically "business" bad debts. Decisions will be entered under Rule 50.